UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                    :
CYBERSCAN TECHNOLOGY, INC.,                         :
                                                    :
                         Plaintiff,                 :
                                                    :         06 Civ. 526 (GEL)
         -against-                                  :
                                                    :      **OPINION AND ORDER**
SEMA LIMITED, EDOUARD LE MARIE,                     :
and MARIE-PIERRE LE MARIE,                          :
                                                    :
                         Defendants.                :
                                                    :
------------------------------------------------------x

J. Joseph Bainton and Michael J. Cohen,
Bainton McCarthy LLC, New York, New
York, for plaintiff.

Roya Moghadassi-Weiss, Moghadassi &
Associates, New York, New York, for
defendants.


GERARD E. LYNCH, District Judge:

        Defendants Sema Limited ("Sema"), Edouard Le Marié and Marie-Pierre Le Marié move

to dismiss the Amended Complaint filed by plaintiff Cyberscan Technology, Inc. ("Cyberscan").

The motion will be denied.

## BACKGROUND

        Plaintiff is a corporation organized under Delaware law, having its principal place of

business in London, England.  Its primary business is in supplying video game systems to

casinos, lotteries and betting operations worldwide.  (Compl. ¶ 2.)  Defendant Sema is a Hong

Kong corporation that offers services in connection with initial public offerings, equity private

placements, mergers and acquisitions, and the like.  (Id. ¶ 3.)  Defendants Edouard Le Marié and

Marie-Pierre Le Marié, his wife, are citizens of France and co-directors of Sema.  (Id. ¶¶ 5-7.) Plaintiff claims that the Le Mariés "reside in New York City" and regularly transact business there (id. ¶ 10), an assertion which the defendants hotly dispute.  (D. Mem. at 3.)

In an agreement dated July 25, 1998, Cyberscan and Sema entered into an agreement under which Sema was to act as financial advisor in connection with Cyberscan's proposed recapitalization.  (Gatto Dec. Ex. C.)  In December 1998, the agreement was amended.  (Compl. ¶17 & Exs. B, C; Gatto Dec. ¶15 & Ex. M.)  Cyberscan was dissatisfied with Sema's subsequent services, however, and in a letter dated April 26, 1999, Cyberscan terminated the agreement. (Compl. ¶¶ 21-22; Gatto Dec. ¶ 17 & Ex. P.)  Mr. Le Marié acknowledged the termination by email shortly afterward.  (Gatto Dec. ¶ 17 & Ex. Q.)

Some years later, in September of 2005, Sema contacted Cyberscan to demand payment of certain sums allegedly due under the agreement.  (Compl. ¶ 26.)  Cyberscan contends that Sema has no entitlement to these sums.  It also contends that Sema was "not capable by experience and by law to have undertaken to perform the services contemplated" by the 1998 agreement, and that the agreement was therefore void ab initio.  (Compl. ¶¶ 29-30.)  Apparently anticipating an action against it by Sema, Cyberscan brought this action in the Supreme Court of the County of New York (Moghadassi-Weiss Dec. Ex. 14, 15), and defendants removed to federal court.  (D. Mem. 6.)  Cyberscan seeks a declaration of the rights and agreements of the parties under the 1998 agreement, as well as restitution and certain damages.  Defendants now move to dismiss the action for lack of personal jurisdiction and on grounds of forum non conveniens.

**DISCUSSION**

I.   <u>Personal Jurisdiction</u>

A.   **Personal Jurisdiction Standards in Diversity Cases**

"In diversity cases, federal courts must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant," <u>Savin v. Ranier</u>, 898 F.2d 304, 306 (2d Cir. 1990), because "the amenability of a [defendant] to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." <u>Arrowsmith v. United Press Int'l</u>, 320 F.2d 219, 223 (2d Cir. 1963) (en banc).  Accordingly, courts must first decide whether jurisdiction is appropriate under the relevant state law, and then decide whether the exercise of jurisdiction comports with due process.  <u>See id</u>. at 223.  The plaintiff generally has the burden of proof in establishing personal jurisdiction over the defendant.  <u>See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.</u>, 751 F.2d 117, 120 (2d Cir. 1984).

The parties in this case have not begun discovery.  "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 206 (2d Cir. 2003).  The district court has "considerable procedural leeway" in deciding 12(b)(2) motions, and it may accept affidavits if it so chooses.  <u>See Marine Midland Bank v. Miller</u>, 664 F.2d 899, 904 (2d Cir. 1981). "Where . . . the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction," <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 507 (2d Cir. 1994), meaning "an averment of facts that, if credited . . . ,

would suffice to establish jurisdiction over the defendant." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996), quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).

"[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). However, allegations that "lack the factual specificity necessary to confer jurisdiction" and "conclusory statements [] without any supporting facts" are not sufficient, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998) (internal quotations and citations omitted).

**B.     Whether Jurisdiction Exists Under New York Law**

As noted above, to determine whether personal jurisdiction exists, courts must first determine whether the relevant state law would provide for personal jurisdiction. Defendants devote several pages of their memorandum of law to arguing that personal jurisdiction is not available under N.Y. C.P.L.R. § 301, which creates general jurisdiction over non-domiciliary defendants in certain circumstances. In its memorandum opposing the motion to dismiss, however, plaintiff relies entirely on N.Y. C.P.L.R. § 302(a)(1), so the following discussion will focus on that section.

N.Y. C.P.L.R. § 302, New York's long-arm statute, provides for specific jurisdiction over non-domiciliaries in certain circumstances. See id. § 302(c); Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). Section 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator,

who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  Sole Resort, 450 F.3d at 103.

       *1.*    *Transaction of Business In New York*

Although the inquiry into whether an out-of-state defendant transacts business in New York requires an assessment of the totality of the circumstances, United States Theatre Corp. v. Gunwyn/Lansburgh, 825 F. Supp. 594, 596 (S.D.N.Y. 1993), there are four factors that should be given special attention: (1) whether the defendant has an on-going contractual relationship with a New York corporation; (2) whether the defendant negotiated or executed a contract in New York, and whether the defendant visited New York after executing the contract with the parties; (3) whether there is a choice of law clause in any such contract; and (4) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects [the defendant] to supervision by the corporation in the forum state.  Commc'ns Partners Worldwide, Inc. v. Main St. Res., No. 04 Civ.10003 (PKL), 2005 WL 1765712, at *3 (S.D.N.Y. July 26, 2005).  See Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp., 98 F.3d 25, 29 (2d Cir. 1996).

The agreement in this case contains no choice-of-law provision, but "a choice of law clause alone is not dispositive," Premier Lending Servs., Inc. v. J.L.J. Assoc., 924 F. Supp. 13, 17 (S.D.N.Y. 1996), and neither is its absence.  As plaintiff is not a New York corporation, it cannot be said that defendants had at the time of the events in question an on-going relationship

with a New York corporation (although defendants did perhaps have an ongoing relationship with the New York law firm and public relations firms that assisted with the Private Placement Memorandum).  The first and third factors, therefore, do not suggest that defendants transacted business in New York.

The second and fourth factors, however, both of which deal with post-contractual activity, strongly suggest that defendant did transact business in New York, because the parties expected significant activity in New York pursuant to the contract, and at least some of the expected activities in New York did in fact take place.  See N.Y. C.P.L.R. § 302(a)(1) (providing jurisdiction over, inter alia, "any non-domiciliary . . . who . . . contracts anywhere to supply goods or services in the state").  Compare Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 21 A.D.3d 90, 94-95 (1st Dep't. 2005) (finding personal jurisdiction under § 302(a)(1) where defendant, without leaving its place of business in Montana, electronically negotiated a securities transaction in New York with a New York-based plaintiff) with PaineWebber Inc. v. Westgate Group, Inc., 748 F. Supp. 115, 119 (S.D.N.Y. 1990) (finding no personal jurisdiction where defendants' actions undertaken pursuant to the contract took place outside New York).  Post-contractual behavior is relevant to the question of personal jurisdiction, as it must be; a great deal of contract litigation arises not from the execution of agreements, but from their implementation. See First Wall St. Capital Corp. v. Int'l Prop. Corp., No. 97 Civ. 702 (JGK), 1998 WL 338105, at *5 (S.D.N.Y. Jun 24, 1998) (holding that defendant's post-agreement follow-up meetings with plaintiff's representatives in New York, and telephone calls and faxes to New York City in connection with the agreement, were significant factors favoring of jurisdiction).  In this case, although the agreement itself was executed outside New York, it is clear that Sema, through its

representative Mr. Le Marié, transacted substantial business in New York pursuant to the agreement.

Plaintiff's reason for entering the agreement, it alleges, was to raise funds in the United States through the sale of securities, specifically with an eye toward being listed on the NASDAQ exchange.  (Gatto Dec. ¶¶ 3-4.)  This was apparently defendants' understanding as well.  Plaintiff points to an "action list" of activities that Mr. Le Marié proposed to undertake pursuant to the agreement (Gatto Dec. Ex. H.), which appears to be a list of activities that would lead to a listing on the NASDAQ exchange.  Many or most of the actions would thus take place substantially in New York.  Plaintiffs also point to a letter from Mr. Le Marié discussing strategies for a NASDAQ listing (Gatto Dec. Ex. F) and another letter from Mr. Le Marié suggesting the retention of a New York law firm in this regard (Gatto Dec. Ex. G), further indicating that such a listing was prominent in the parties' minds.

Of course, merely thinking of New York does not give rise to personal jurisdiction here. Plaintiff also asserts that Mr. Le Marié, a citizen of the United States as well as France (Le Marié Dec. ¶ 1), focused his efforts pursuant to the agreement on New York City (Gatto Dec. ¶ 13), and that "the services Sema performed for [plaintiff] pursuant to the Agreement were performed primarily in New York City."  (Compl. ¶ 18.)  Specifically, plaintiff alleges that "Sema worked in New York to attempt to find investors for [plaintiff]," and that Mr. Le Marié "met numerous times in New York City with potential investors."  (Id.)  Plaintiff points to several letters to potential investors in New York, signed "Edouard F. Le Marié – NYC" (Gatto Dec. Ex. I).  Mr. Le Marié allegedly used the services of a New York-based law firm and a New York-based

public relations firm to prepare, print and distribute a Private Placement Memorandum for plaintiff, in a further effort to find investors. (Gatto Dec. ¶ 13.)

Mr. Le Marié acknowledges that he spent approximately six weeks in New York working in offices provided by one of plaintiff's corporate officers. (Le Marié Dec. ¶ 23.) Plaintiff further asserts that when Mr. Le Marié was in New York providing services for plaintiff, he worked from the New York offices of two firms based in New York City, used Sema letterhead listing the corporation's address as "care of" one of those firms, and stayed in a New York hotel at plaintiff's expense. (Gatto Dec. ¶ 11 & Ex. H; see Le Marié Aff. Aug. 18, 2006 ("2d Le Marié Aff.") ¶¶ 39-41)

Moreover, Mr. Le Marié admits that he executed an amendment to the agreement in New York. (Le Marié Dec. ¶ 24; Compl. ¶ 17; Gatto Dec. Ex. N.) The fact that a modification of the contract was executed in New York would not by itself constitute transaction of business sufficient to give rise to personal jurisdiction, see Presidential Realty Corp. v. Michael Square West, Ltd., 44 N.Y.2d 672, 673-74 (1978), but in combination with the substantial actions taken to implement the agreement in New York it is significant.

Defendants argue that the "overwhelming majority" of defendants' services were performed abroad, not in New York. (D. Reply at 6.) But § 302(a)(1) does not require that any particular proportion of defendants' acts took place in New York; it is a "single act statute," meaning that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988) (internal quotation marks omitted).

Thus, defendant's argument that "only fifteen percent of Mr. Le Marié's time during the Retainer Period was spent in New York" (D. Reply at 8) is misplaced. A single visit could be enough, if the claims arose out of that visit. "[T]he underlying question is whether the defendant has performed purposeful acts in New York in relation to the contract," Premier Lending Servs., 924 F. Supp. at 15, and in this case plaintiff has adequately alleged, and indeed defendants have effectively conceded, that defendants have done so. Considering the totality of the circumstances, plaintiff's allegations support the conclusion defendants engaged in significant post-contractual activity in New York, sufficient to constitute the purposeful transaction of business for purposes of § 302(a)(1).

2. *Whether Plaintiff's Claims Arise From Defendants' Business Transactions in New York*

The second requirement for jurisdiction under C.P.L.R. § 302(a)(1) is that the claims asserted arise from the business transactions that purportedly give rise to jurisdiction. "Essential to the maintenance of a suit against a nondomiciliary under [§302(a)(1)] is the existence of some articulable nexus between the business transacted and the cause of action sued upon." McGowan v. Smith, 52 N.Y.2d 268, 272 (1981). In other words, there must be "a substantial relationship between the transaction and the claim asserted." Kreutter, 71 N.Y.2d at 467. A connection that is "merely coincidental" is insufficient to support jurisdiction. Johnson v. Ward, 4 N.Y.3d 516, 520 (2005).

In this case, all of the New York activity discussed above is directly related to the claims in the case. Plaintiff claims that Sema misrepresented its ability to perform certain services which the parties understood would take place in New York, and seeks a declaratory judgment that Sema's actions pursuant to the agreement — a substantial number of which were performed

9

in New York, as discussed above — do not entitle it to any recovery. Plaintiff has thus adequately alleged that the defendants entered into an agreement understood by both parties to concern activities in New York and engaged in substantial activities in New York pursuant to that agreement; plaintiff's claims arise directly out of those business activities. Accordingly, plaintiffs have shown that personal jurisdiction exists under CPLR § 302(a)(1).[1] See Sole Resort, 450 F.3d at 104 (noting that in cases that failed to meet the § 302(a)(1) standard, "the injuries sustained and the resulting disputes bore such an attenuated connection to the New York activity upon which the plaintiffs attempted to premise jurisdiction that the disputes could not be characterized as having 'arisen from' the New York activity.").

### C.    Whether Personal Jurisdiction is Consistent With Due Process

As noted above, after a federal court in diversity decides whether state law gives rise to personal jurisdiction, it must also determine whether the exercise of jurisdiction would comport with due process. See Arrowsmith, 320 F.2d at 223. The Due Process Clause permits a forum to exercise personal jurisdiction over a non-resident defendant who has "certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" Calder v. Jones, 465 U.S. 783, 788 (1984), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940), and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Where the claim arises out of the defendant's contacts with the forum, the required minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business

---

[1] Because jurisdiction exists under § 302(a)(1), it is not necessary to decide whether it also exists under § 301, as alleged in the complaint at ¶ 10, or the other sub-sections of § 302, nor whether plaintiff's failure to respond to defendant's arguments concerning jurisdiction under § 301 (D. Mem. at 8-10) or §302(a)(2) and (a)(3) constitutes abandonment or waiver of a claim that personal jurisdiction exists under these provisions.

in the forum and could foresee being haled into court there.  See Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S.
286, 297 (1980); U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d
Cir. 2001).  Moreover, it must be determined that the assertion of personal jurisdiction
"comports with 'traditional notions of fair play and substantial justice'" and is reasonable under
the circumstances of the case.  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568
(2d Cir. 1996), quoting Int'l Shoe, 326 U.S. at 316.

"[S]atisfaction of the section 302(a)(1) criteria will generally meet federal due-process
requirements," Kelly v. MD Buyline, Inc., 2 F. Supp. 2d 420, 431 (S.D.N.Y. 1998), because the
scope of specific jurisdiction under Section 302 does not extend as far as the federal Constitution
permits.  Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GMBH & Co.,
150 F. Supp. 2d 566, 572 (S.D.N.Y. 2001).  This case is no exception to that general principle.
Defendants entered the New York forum intending to assist in arranging a listing on the
NASDAQ exchange, while in New York arranged solicitations of other New York residents for
that purpose, listing a New York address while doing so, and retained New York professionals in
furtherance of that effort.  There can therefore be little question that defendants purposefully
availed themselves of the privilege of doing business in New York, and that they could have
foreseen the possibility of being haled into court here.

For the same reason, the assertion of personal jurisdiction over the defendants here
comports with traditional notions of fair play and substantial justice and is reasonable under the
circumstances of this case.  The exercise of jurisdiction will impose no greater a burden on the
defendants than the activity that brought them to New York in the first place, and New York

11

clearly has a strong interest in policing activities directed toward its stock markets.  See Chaiken
v. VV Pub. Corp., 119 F.3d 1018, 1028 (2d Cir. 1997) (listing "the burden that the exercise of
jurisdiction will impose on the defendant" and "the interests of the forum state in adjudicating
the case" among the factors to be considered in determining whether it is "reasonable" to
exercise jurisdiction in a particular case).  Defendants have not shown "a compelling case that
the presence of some other considerations would render jurisdiction unreasonable."  Burger
King, 471 U.S. at 477.  Accordingly, it is constitutionally appropriate to exercise personal
jurisdiction in this case.

## II.      Forum Non Conveniens

### A.      Standards for Dismissal on Grounds of Forum Non Conveniens

Under the doctrine of forum non conveniens, a district court has broad discretion to
dismiss an action, over which jurisdiction is otherwise proper, based on the convenience of the
parties and the interests of justice.  See Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 527
(1947); R. Maganlal & Co. v. M.G. Chem. Co., Inc., 942 F.2d 164, 167 (2d Cir. 1991) ("A
district court has broad discretion in deciding whether to dismiss an action on the grounds of
forum non conveniens.")

In considering a motion for forum non conveniens, district courts must first determine the
degree of deference to be accorded the plaintiffs' choice of forum, since "the plaintiff's choice of
forum should rarely be disturbed."  Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir.
2001), quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  The greater the deference
due to plaintiff's choice of forum, "the more difficult it will be for the defendant to gain

dismissal for forum non conveniens" by establishing that the balance of conveniences favors defendant's choice of forum.  Id. at 72.  After determining the appropriate level of deference, courts must determine whether an adequate alternative forum exists, id. at 73, and finally the court must balance two sets of factors, relating to the private and public interests at stake, to determine which forum is most appropriate.  Id.

### B.    Degree of Deference to Plaintiff's Choice of Forum

Ordinarily, there is a "strong presumption" in favor of the plaintiff's forum of choice, but "[b]ecause the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981).  For plaintiffs who sue outside their home forums, a sliding scale of deference applies, in which the amount of deference due depends on whether the plaintiff's choice of forum was dictated by considerations of convenience, as opposed to forum-shopping. See Iragorri, 274 F.3d at 71-72 (discussing the degree of deference due to United States plaintiffs who sue in a domestic forum where they do not reside).

In this case, plaintiff claims to be based in the United States (P. Mem. 11), while defendants argue that plaintiff should be treated as a foreign entity.  (Le Marié Dec. ¶¶ 6-20.) The material facts underlying this disagreement are not really disputed; although plaintiff is incorporated under the law of Delaware, its principal place of business is in London.  (Compl. ¶ 2.)  Plaintiff claims that it maintains "*a* principal place of business in Las Vegas, Nevada" (Gatto Dec. ¶ 1; emphasis added), but does not deny that the bulk of plaintiff's assets are in England, that most of its offices are there, that the company has indicated in its own publications

13

that central management and control of the company is located in England, and that the vast majority of its revenue stems from activity there.  (Le Marié Dec. ¶¶ 8-13.)

The determination of whether to treat plaintiff as a foreign or domestic entity is "motivated . . . by the sensible consideration that the greater connections a plaintiff has to his chosen forum, the more likely is the inconvenience to him resulting from changing to a foreign forum."  DiRienzo v. Philip Servs. Corp., 232 F.3d 49, 62-63 (2d Cir. 2000).  It seems clear that plaintiff has a greater connection to London than to New York, and aside from the availability of witnesses and evidence — issues to be considered pursuant to the balancing of private and public interest factors discussed below — plaintiff cannot seriously argue that it would be meaningfully inconvenienced if forced to litigate this case in a city where most of its assets and key personnel are located.

It is not, however, plaintiff's burden to show that New York is more convenient than London, and the fact that plaintiff has easy access to London does not mean that its choice of forum deserves no deference.  The degree of deference to be afforded a plaintiff's choice of forum varies depending on the extent to which the plaintiff appears to have engaged in illegitimate forum-shopping.  The more it appears that forum-shopping motivated the choice of forum, "the less deference the plaintiff's choice commands," Iragorri, 274 F.3d at 72, whereas the more it appears that the plaintiff's choice has been dictated by "valid" reasons — perhaps most importantly, considerations of convenience — "the greater the deference that will be given to the plaintiff's forum choice."  Id. at 71-72.  In this case, as will be discussed below, there is little evidence that Cyberscan has engaged in illegitimate forum-shopping, as opposed to simply

seeking to litigate the case where most of the actions taken to implement the agreement at issue allegedly took place.

It is not necessary to resolve this issue, however, because even if plaintiff's choice of forum is afforded only the level of deference due to a foreign plaintiff, the public and private interest factors do not support a dismissal.  The following analysis therefore assumes that Cyberscan is entitled to less deference than a domestic plaintiff, but it is important to note that even a foreign plaintiff's choice of forum is entitled to some deference.  See Murray v. British Broad. Corp., 81 F.3d 287, 290 (2d Cir. 1996) ("[S]ome weight must still be given to a foreign plaintiff's choice of forum."); Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000) ("[L]ess deference is not the same thing as no deference."); Skelton Fibres Ltd. v. Canas, 96 Civ. 6031 (DLC), 1997 WL 97835, at *4 (S.D.N.Y. Mar. 6, 1997) ("Even with this lowered deference . . . this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for *forum non conveniens* is the exception rather than the rule." (citation and internal quotation marks omitted)).

## C.   Adequate Alternative Forum

To secure dismissal of an action on grounds of forum non conveniens, a movant must show that an adequate alternative forum is available.  Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 157 (2d Cir. 2005).  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003).  The moving party has the burden of showing that an adequate alternative forum exists.  See Norex, 416 F.3d at 157.  The defendants have identified England as their alternative forum of choice.

15

"Ordinarily, a foreign forum will be adequate when the defendant is subject to the jurisdiction of that forum."  R. Maganlal & Co. v. M.G. Chem. Co., Inc., 942 F.2d 164, 167 (2d Cir. 1991).  Plaintiff argues that England is not an adequate alternative forum because the defendants "are not citizens nor incorporated in the United Kingdom and thus would not be amenable for suit there."  (P. Mem. at 12.)  Defendants argue that both Cyberscan and Sema are amenable to process in England.  (D. Mem. at 16.)  Neither party's papers cite any legal authority in support of its view as to whether defendants are amenable to process or suit in England.  Moreover, although defendants claim to be amenable to process in England, they do not unequivocally consent to subject themselves to jurisdiction there.  Cf. Norex, 416 F.3d at 156 ("Significantly, nothing in the record indicates that defendants are willing to submit themselves to jurisdiction in [plaintiff's] home forum of Canada.").[2]

It is not necessary to resolve this issue either, however, because even assuming arguendo that England is an adequate alternative forum, the private and public interest factors do not support a dismissal in this case.  See Krepps v. Insead, 04 Civ. 3260 (RWS), 2004 WL 2066598, at *2 (S.D.N.Y. Sept. 16, 2004) (assuming for the purposes of argument that defendant's preferred forum was adequate, but concluding nevertheless that the balance of private and public

---

[2] Defendants have submitted letters exchanged by attorneys representing the parties in which Sema threatened to commence legal proceedings against Cyberscan in England. (Moghadassi-Weiss Dec. Ex. 6, 11, 13.)  The letters noted that the agreement itself was signed in London, that "[t]he vast majority of the meetings between Cyberscan and SEMA were held in London," that SEMA had other meetings with potential investors in London, that the "vast majority" of the relevant investors were in London, and that the contract was governed by English law.  (Id.)  These facts would presumably make it likely that Sema would be subject to jurisdiction in England, but the parties have submitted nothing to the Court that would make it possible to determine whether the facts as Sema's counsel stated them are sufficient to give rise to jurisdiction under English law.

interest factors did not weigh sufficiently in defendant's favor so as to warrant dismissal for forum non conveniens).

### D.      Private and Public Interest Factors

The third step in the forum non conveniens analysis is to evaluate the overall comparative convenience of the forums by considering the various private and public interest factors involved.  "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." Iragorri, 274 F.3d at 74.

To prevail, a defendant normally has the burden to demonstrate that both the private and public interest factors "strongly" favor dismissal. DiRienzo, 294 F.3d at 30-31; see also Manu Intern., S.A. v. Avon Prods., Inc., 641 F.2d 62, 65 (2d Cir. 1981) ("'[T]he plaintiff's choice of forum is to be respected unless the balance of both public and private interests strongly justifies a transfer,'" quoting Calavo Growers of Cal. v. Generali Belgium, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J. concurring)).  Relevantly to this case, "even where the degree of deference is reduced, the action should be dismissed only if the defendant demonstrates that "the chosen forum is . . . genuinely inconvenient and the [alternative] forum significantly preferable." Bigio v. Coca-Cola Co., 448 F.3d 176, 179 (2d Cir. 2006) (citation and internal quotation marks omitted); see Iragorri, 274 F.3d 74-75 ("[A] lesser degree of deference to the plaintiff's choice . . . does not guarantee dismissal. . . . The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the [alternative] forum significantly preferable."); see also Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of

Pakistan, 273 F.3d 241, 246 (2d Cir. 2001) (noting that the defendant bears the burden of proof on all elements of the motion at this stage).

Here, even if Cyberscan is treated as a foreign plaintiff, and the Court thus requires defendants to show only that New York is "genuinely inconvenient" and England "significantly preferable," defendant has failed to meet its burden.

### 1. *Private Interest Factors*

The private interest factors to be considered include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Iragorri, 274 F.3d at 73-74, quoting Gulf Oil, 330 U.S. at 508.

Plaintiff lists seven witnesses who reside in New York and who purportedly have knowledge about defendants' activities relating to Cyberscan's attempts to raise money by selling securities in the United States. (Gatto Dec. ¶ 23.) It also claims that various other such witnesses may exist in New York, but have yet to be identified. (Id.) Plaintiff also lists five witnesses based in other parts of the United States who would be available to testify in New York. (Id.) Moreover, plaintiff indicates that Jean-Marie Gatto and Sylvie Linard, Cyberscan's Chief Executive Officer and Chief Operating Officer, would be available and willing to testify in New York. (Id. ¶ 24.) As defendants point out, some of plaintiff's witnesses are based in England (2d Le Marié Aff. ¶ 29), but defendants do not identify any of these potential witnesses as being unable or unwilling to appear in New York. This is significant, as "such identification

is generally required for a forum non conveniens dismissal." Haywin Textile Prods., Inc. v. Int'l Fin. Inv., 137 F. Supp. 2d 431, 436 (S.D.N.Y. 2001).

Defendants also list witnesses they feel will be required. Their list includes five witnesses in London, four in Geneva, three in South Africa, and three elsewhere in Europe. It does not explain why the individual witnesses purportedly based in London are important, other than by stating that all of the listed witnesses can attest "among other things, to the fact that Sema's services pursuant to the Agreement were concentrated not in the United States, but in Europe and South Africa." (Le Marié Dec. ¶ 37.) If the witnesses based in both London and Europe are indeed to testify concerning events in Europe and South Africa, then it hardly seems the proceedings should be moved to London for the sake of the witnesses based there, as opposed to the witnesses based in the relevant region. Defendants make no effort to explain whether witnesses based in Europe or Africa would be required or willing to testify in London, or whether those witnesses would be unable or unwilling to appear in New York.

Defendants contend, no doubt correctly, that a significant part of the relevant documentary evidence is located "in France and Great Britain." (2d Le Marié Aff. ¶ 31.) As to the former, evidence in France is no reason to move the suit to England. As to the latter, the defendants offer no reason to think that transporting this evidence to New York would pose any insurmountable or even significant hardship on the parties. See, e.g., DiRienzo, 294 F.3d at 30 ("'To the extent documents exist [overseas], advances in transportation and communication accord this issue less weight,'" quoting Itoba Ltd. v. LEP Group PLC, 930 F. Supp. 36, 44 (D. Conn. 1996); Overseas Programming Cos. v. Cinematographische Commerz-Anstalt, 684 F.2d 232, 232 n.1 (2d Cir. 1982) ("[A]dvances in modern telecommunications and jet travel may

further circumscribe a district court's discretion in dismissing a suit on the ground of forum non conveniens.").

It should also be noted that modern civil litigation rarely results in a trial.  The vast majority of cases are resolved by settlement, by summary judgment, or by other legal devices. There is then something quaint about determining the best place to *litigate* a case by speculating at the outset of the matter, before the facts have been adequately investigated, about the best place to stage a largely hypothetical *trial*.  Statistically, there is a strong likelihood that neither the parties nor the witnesses they name will ever be required to make the trip to New York.

Overall, the record as it now exists supports plaintiff's view of the case as revolving in large part around events in New York.  At the time of the agreement, the parties were more focused on New York than London.  Defendants acknowledge that London's AIM exchange "had very little visibility" at the time of the agreement, and that the parties did not spend much time discussing London when the agreement took place.  (Le Marié Dec. ¶ 31; <u>see also</u> Letter from Christopher Suits, Director of ING Barings, to Edouard Le Marié, Feb. 18, 1999 (discussing the possibility of a NASDAQ listing as compared to a listing on European markets; not discussing a London exchange listing), Le Marié Dec. Ex. 6A.)  Defendants have not shown that this case would require more testimony concerning London-based activity than testimony concerning activity based in New York.

As to the defendants themselves, even if they are amenable to suit in England, the defendants appear to have no particularly strong connection to that country.  Defendants claim that Sema is a Hong-Kong based corporation, and that the individual defendants reside in South

Africa and/or France.  (Le Marié Dec. ¶¶ 21-27.)  Mr. Le Marié's list of clients of Sema (other

than Cyberscan) and their locations names not a single one in England.  (Le Marié Dec. ¶ 3.)

Nor have defendants shown any significant inconvenience to them as a result of

defending the case in New York.  It is evident from the record that Mr. Le Marié, at least, has at

various points made regular visits here, and both parties have legal representation available to

them in New York.  See Bigio, 448 F.3d at 180 (suggesting that location of counsel may be a

relevant private interest factor).  Thus, although defendants seek to have this case dismissed in

favor of litigation in England, they have not shown that considerations of convenience point

meaningfully toward that country.

Defendants also allege that plaintiff has engaged in forum-shopping.  They have not

supported this claim, however, with specific information pertinent to any of the factors courts

typically consider in determining whether forum-shopping has taken place.

> Circumstances generally indicative of forum shopping . . . include
> "[1] attempts to win a tactical advantage resulting from local laws
> that favor the plaintiff's case, [2] the habitual generosity of juries in
> the United States or in the forum district, [3] the plaintiff's
> popularity or the defendant's unpopularity in the region, or [4] the
> inconvenience and expense to the defendant resulting from
> litigation in that forum."

Norex, 416 F.3d at 155, quoting Iragorri, 274 F.3d at 72 (alterations in original).

As to the first factor, "attempts to win a tactical advantage resulting from local laws that

favor the plaintiff's case," defendants have pointed to no local laws that favor the plaintiff.

Defendants have suggested that plaintiff decided to bring this litigation in New York "as a

tactical move to sideline Sema's efforts to recover its money in England" (D. Mem. at 16), but

never argues that plaintiffs would be better off under American law.

21

As to the second factor, "the habitual generosity of juries in the United States or in the forum district," assuming arguendo that plaintiff is entitled to the jury trial it seeks (see Compl. at 11), defendants have not attempted to argue that New York juries would be more sympathetic to plaintiff's claims than would a finder of fact in England.  In any event, this factor may have less relevance in a commercial case than in a tort case in which jury discretion over findings of pain and suffering or punitive damages make "jury generosity" a more salient issue.  Nor do defendants argue that the third factor, "the plaintiff's popularity or the defendant's unpopularity in the region," has any relevance here.

The fourth factor that might suggest forum-shopping is "the inconvenience and expense to the defendant resulting from litigation in that forum."  Defendants claim that plaintiff "surreptitiously and in bad faith opted for New York, where it knew defendants would experience the most amount of inconvenience" (D. Mem. at 16-17), but this is not elaborated upon or supported by detailed allegations.  As discussed above, defendants have not shown any significant inconvenience that would arise from forcing them to litigate the case in New York rather than London.  It is true that a flight from Paris, where the individual defendants say they reside (but see Gatto Dec. ¶ 5, claiming they reside principally in South Africa), to New York takes several hours longer than a flight from Paris to London.  Other than that, defendants have offered nothing suggesting that litigating the case in London would be more convenient for them.  Defendants are neither incorporated in England nor citizens of that country.  Both New York and London are many time zones away from defendant Sema's purported place of business in Hong Kong.  (See D. Mem. at 1, Le Marié Dec. ¶¶ 21-22.)   Defendants have, in short, failed to show

that forum-shopping motivated plaintiff's choice of forum, or that any of the private interest factors favor dismissal, much less that England is "significantly preferable" to New York.

### 2. Public Interest Factors

The public interest factors to be considered in a forum non conveniens analysis include "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) avoiding difficult problems in conflict of laws and the application of foreign law." DiRienzo, 294 F.3d at 31 (citation and internal quotation marks omitted); see also Iragorri, 274 F.3d at 74.

Court congestion is of course always a concern in the Southern District of New York, but the defendants have made no effort to show that it is less of a concern in the courts of London. See Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 611 (2d Cir. 1998) (noting that "there is no indication that British courts are more or less congested than American courts, or that a judgment issued in either England or the United States would be unenforceable").

As to the second factor, the unfairness of imposing jury duty on a community with no relation to the litigation, this case involves allegations that an agreement executed in England but implemented largely in New York should be declared void because of fraudulent activity on the part of the defendants relating to New York securities markets. The fact that a case involves American securities markets does not automatically bar a dismissal on grounds of forum non conveniens, but it does establish a clear relation to the community. Cf. Allstate Life Ins. Co. v. Linter Grp. Ltd., 994 F.2d 996, 1002 (2d Cir.1993) ("United States courts have an interest in

23

enforcing United States securities laws, [but] this alone does not prohibit them from dismissing a securities action on the ground of forum non conveniens").  The fact that the case involves activity in New York also makes it difficult for defendants to show that the third factor, the local interest in having localized controversies decided at home, cuts in their favor.  Because the contract concerned activity to be undertaken in New York, this controversy is, at least in part, local to this jurisdiction.

As to the fourth factor, defendants assert that the interpretation of the agreement is governed by English law.  (D. Mem. at 18.)  Plaintiffs do not appear to dispute this.  However, assuming that this Court must apply foreign law in this case, nothing in the record suggests that it would be "unusually difficult or burdensome" to do so.  United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 209 (S.D.N.Y. 2002).  The application of English law would not even require a translation of relevant source materials.  Moreover, the Second Circuit has cautioned "against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform."  Manu Int'l, S.A. v. Avon Prods., Inc., 641 F.2d 62, 68 (2d Cir. 1981); see Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir. 1998) (noting that the need to apply foreign law is a public interest factor favoring dismissal but is not necessarily dispositive); see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, PLC, 03 Civ. 200 (GEL), 2003 WL 21180421, at *10 (S.D.N.Y. May 20, 2003) ("Because federal courts must often apply foreign law, and the means of pleading and proving foreign law are provided in the Federal Rules of Civil Procedure, interpreting the contracts according to English law, and instructing a jury on that law if this case should go to trial, are not burdens heavy enough to weight the balance of convenience strongly

in favor of dismissing the action."). On the whole, defendants have failed to show that the public interest factors render England "significantly preferable" to New York.

### 3. Balancing of Factors

In sum, the defendants have failed to show that "the chosen forum is . . . genuinely inconvenient and the [alternative] forum significantly preferable," Bigio, 448 F.3d at 179 (citation and internal quotation marks omitted), or that plaintiff seeks "not simply justice but perhaps justice blended with some harassment." Gulf Oil, 330 U.S. at 507. This is therefore not "one of those rather rare cases where the doctrine should be applied." Id. at 509.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction and on grounds of forum non conveniens (Doc. # 18) is denied.

SO ORDERED.

Dated: New York, New York
        December 13, 2006

GERARD E. LYNCH
United States District Judge

25